## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**MICHAEL DIAS,**
***individually and on behalf of***
***all others similarly situated*,**

     **Plaintiff,**

**v.**                                                            **CASE NO.:**

**BLUE KNIGHT GLOBAL RISK**
**MANAGEMENT SERVICES**                    **JURY TRIAL DEMANDED**
**d/b/a BLUE KNIGHT**
**PROTECTION SERVICES,**
**and BLACKSTONE**
**CONSULTING, INC.,**

     **Defendants.**
_____/

## CLASS ACTION COMPLAINT

Named Plaintiff, Michael Dias, individually and on behalf of all other similarly situated individuals, for his Class Action Complaint and alleges the following individual and class claims against Blue Knight Global Risk Management Services d/b/a Blue Knight Protection Services ("Blue Knight") and Blackstone Consulting, Inc., ("Blackstone") (collectively "Defendants"), and in support thereof states as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x, which imposes several important requirements on consumer reporting agencies ("CRAs"), such as

Defendants, that sell employment-related consumer reports (even if Defendants deny what they sell actually constitutes a "consumer report").

2.    The Named Plaintiff was denied employment opportunities because of Defendants' actions described herein, resulting in a lost job, lost pay, and lost benefits.

3.    Defendants Blue Knight and Blackstone are companies that used automated processes to webscrape criminal histories from court websites, or purchased such records in bulk, and assign them to specific consumers – largely based on name alone.  They sold these records to their various customers, including one that issued a report to Plaintiff's former employer.

4.    Ultimately, Plaintiff lost a job opportunity because of a background check generated by Defendants, and because Defendants have unilaterally (and illegally) decided the reports they sell do not qualify as "consumer reports," the do not comply with the FCRA.  Thus, neither Plaintiff nor the putative class members were provided with any of the rights afforded them under the FCRA, not the least of which are the notification requirements mandated by 15 U.S.C. § 1681k(a)(1), where consumer reporting agencies ("CRA") like Defendants must notify consumers when they furnished derogatory information to be used as part of an employer's hiring process.

5.    Regardless of the context, anyone that, like Defendants, issues consumer reports must adhere to the FCRA's foundational mandate of having in

place reasonable procedures to ensure the maximum possible accuracy of the information they report.

6. The FCRA also includes multiple provisions aimed at providing consumers with transparency regarding when information is reported about them, and the substance of that information.

7. Here Plaintiff alleges that Defendants violated the FCRA in several ways.

8. First, because they claim not to be governed by the FCRA, when the Plaintiff requested a copy of his full file from Defendants, the Defendants failed to provide all of the information in their files about each requesting consumer (commonly known as a file disclosure), as well as the sources of that information, and to whom Defendants gave any information about Plaintiff.

9. As a result, Defendants violated 15 U.S.C. § 1681g(a), which requires that a CRA provide not only "all information," but also "the sources of the information" in the consumer's file, and comprehensive list of everyone, including end-users, to whom the CRA has provided a report about the consumer. 15 U.S.C. § 1681g(a)(1)–(3). *See* Count I (class claim).

10. Second, Defendants also violated 15 U.S.C. § 1681k by furnishing consumer reports containing public information likely to have an adverse effect on a consumer's ability to obtain employment but failing to provide at the time notification to the consumer that such information was being reported and to whom it was being reported. *See* Count II (class claim).

11.    Third, Defendants included in the report about Plaintiff other non-criminal, adverse information that was too old to have been reported. Defendants reported a supposed violation of an injunction, from 2006, but which never resulted in a finding of such violation. *See* Count III (class claim).

12.    Fourth, Defendants violated the prohibition on publishing obsolete criminal information that was not a conviction of a crime, in violation of 15 U.S.C. § 1681c(a)(2), including as to the report generated on Plaintiff. *See* Count IV (class claim).

13.    Finally, Defendants failed to follow reasonable procedures required under the FCRA to ensure "maximum possible accuracy" of the information it reported about Plaintiff. 15 U.S.C. § 1681e(b).  *See* Count V (individual claim).

## PARTIES

14.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a.

15.    Defendant Blue Knight is a limited-liability company with its principal place of business in Calabasas, California, but is doing business in Florida in this District.

16.    Defendant Blackstone is a corporation with its principal place of business in California, but is doing business in Florida in this District.

17.    In 2018, Defendant Blackstone acquired Beach City Investigations and Protective Services, Inc., d/b/a Blue Knight Protection ("Beach City"). The Vice President of Beach City was Michael Carlson ("Carlson"). The President of Beach City was Kevin Hackie ("Hackie").

18.    After the acquisition of Beach City in 2018, Hackie retained as a separate entity, Blue Knight Global Risk Management Services d/b/a Blue Knight Protection, named herein as Defendant Blue Knight.

19.    Furthermore, after the acquisition, Blackstone engaged Blue Knight to perform consulting services and utilized Hackie's state security provider license. Hackie has sworn, in previous litigation, to this engagement.

20.    Carlson later compiled the report on Plaintiff in September 2021 under the banner Blue Knight Protection.

21.    Thus, Defendants are each a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that compiles, sells, furnishes, and uses consumer reports and services in the Middle District of Florida, and throughout the United States.

22.    Defendants obtain consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from a myriad of publicly available sources such as criminal and traffic records, social security number information, sex offender registries, bulk sellers of such information, and the like.

23.    After acquiring consumer information from its sources, Defendants regularly assemble that information into a report, which is then sold to third parties.  In this case, Defendants sold information to Sun Com Mobile, LLC, ("Sun Com"), which hired Defendants to do a background check on Plaintiff relating to his employment.

24.     Sun Com in turn used the report that contained the information from Defendants for an employment purpose (to fire Plaintiff).

25.     Defendants sell such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

## JURISDICTION AND VENUE

26.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

27.     Venue is proper in the Middle District of Florida because Defendants are subject to personal jurisdiction in this District and Division, and sell consumer reports regarding individuals residing in this District to employers located in this District (including Plaintiff's).  28 U.S.C. § 1391(c).

## FACTS

### A.     Defendants are each a Consumer Reporting Agency

28.     Despite the fact that Defendants are each a consumer reporting agency and sell consumer reports as defined by the FCRA, they attempt to avoid their obligations under the FCRA by disclaiming FCRA governance in their marketing materials and contracts with third parties.

29.     Despite their statements to the contrary, Defendants specifically market themselves as companies that provide information and services that are governed by the FCRA.

30.    For example, one of the services Defendant Blue Knight provides is known as "Comprehensive Person Reports." According to its website, its private investigative services includes "Background Checks" comprised of "[c]riminal and background checks."[1]

31.    Also according to its website, Defendant Blue Knight is "capable of performing a wide variety of computer forensics."[2]

32.    But, in a transparent effort to avoid liability for failure to comply with the FCRA, Defendant Blue Knight also includes FCRA-related disclaimers on its "Comprehensive Person Reports."[3]

33.    Further, because Defendants provide information to companies like Sun Com, which then use the consumer reports for an employment purpose, Defendants have consented to the FCRA's governance of their activities.

34.    Moreover, Defendants know or have reason to know that the information they sell to customers like Sun Com will end up in consumer reports that are used for FCRA purposes and are therefore governed by the Act.

---

[1] *See* https://www.blueknightprotection.com/security-services/private-investigations/, last accessed July 7, 2023.
[2] *See id.*
[3] For example, currently Defendant includes the following disclaimer on its "Comprehensive Person Reports":

> The service does not constitute a "consumer reporting agency" as is defined in the Fair Credit Reporting Act ("FCRA") and the Data does not constitute "consumer reports" as defined in the FCRA. Accordingly, the Data may not be used as a factor in determining eligibility for credit, insurance, employment or another purpose in which a consumer report may be used under the FCRA.

35.    Yet, Defendants maintain the charade that the FCRA does not apply to them.

36.    The FCRA imposes several obligations upon Defendants which are not only well-established, but they are easy to follow.  It is clear from the Defendants' materials—it knows about the FCRA and have chosen not to abide by its strictures despite collecting and selling information that falls under the Act's provisions.

37.    Despite marketing their solutions as including public records such as criminal history, among many other things, Defendants disclaim that the information in the reports that they market and sell for FCRA purposes can be used for such purposes.

38.    Defendants are aware of the entire text of the FCRA and its legislative history, as well as the regulatory oversight by the Federal Trade Commission.

39.    Defendants access large databases of public records and related employment histories as nationwide CRAs. They access and compile databases to prepare and furnish consumer reports for employment and other FCRA purposes.

40.    Plaintiff's former employer fired Plaintiff and other putative class members based in whole or in part on the contents of the consumer reports Defendants sold about them.

41.    Discovery will show that other employers did the same based upon information provided by Defendants in the employment context.

42.    Defendants do not supply any notice to consumers about whom they have sold a report containing adverse employment information to a third party,

such as the criminal records in the cases of Plaintiff (nor any of the putative class members).

43.    Providing notice that a CRA has supplied a consumer report containing negative criminal background information at the time they supply such a report to the third-party CRA or employer arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

44.    Or, even if the report is entirely accurate, consumers still have the right to know that Defendants are supplying information about them that may negatively impact their job prospects. This notice permits consumers the opportunity to discuss potentially negative information preemptively with employers, so they may blunt the impact of such information.

45.    Defendants likewise do not maintain any procedure by which they ensure that the information they report to their customers is complete or up-to-date. *See* 15 U.S.C. § 1681k(a)(2). Defendants therefore cannot rely on this option for complying with 15 U.S.C. § 1681k(a).

## B.    Facts Regarding Plaintiff

46.    Plaintiff was a victim of an inaccurate consumer report sold by Defendants to his former employer, Sun Com, who purposed the Plaintiff's

consumer report and subsequently used it for an employment purpose when firing Plaintiff.

47.    Plaintiff was terminated from his job at Sun Com because Sun Com relied on the inaccurate and derogatory consumer report about him. Defendants obtained and sold a significant portion of the data that was included in that report.

48.    More specifically, Plaintiff applied to work for Sun Com in September 2021.  Sun Com is one of the largest telecommunications carriers in the United States, with more than two hundred locations across eight states.

49.    As part of its hiring processes, Sun Com and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, all parties involved with the sale and use of the consumer report on Plaintiff were obligated to adhere to certain requirements of the FCRA.

50.    Sun Com originally hired Defendants, in September 2021 to perform a pre-employment background check on Plaintiff, the reporting of which information is subject to the FCRA's strictures. The FCRA imposes several important accuracy and transparency requirements on consumer reporting agencies ("CRAs") like Defendants, which are designed to protect consumers like Plaintiff.

51.    Such protections also apply to Defendants in their role as a CRA. Discovery will confirm that Defendants supplied information to Blue Knight,

which Blue Knight then repackaged and furnished to Sun Com as part of Sun Com's background-check process for applicants like Plaintiff.

52.    Additionally, Defendants misrepresented that: (1) they were not a consumer reporting agency; and, (2) that the background check on Plaintiff which Defendants had purchased was not a consumer report, and Defendants then repacked and sold that report to Sun Com who, in turn, failed to provide Plaintiff with the requisite pre-adverse and adverse action notices required by the FCRA under 15 U.S.C. § 1681b(b)(3).

53.    Sun Com bought a consumer report from Defendants, which contained information Defendants included in their report to Sun Com in approximately September 2021.

54.    At the time they sold information purporting to be about Plaintiff to Sun Com, Defendants knew or had reason to know that Sun Com would use the information for an FCRA-governed purpose—employment.

55.    That report contained the erroneous criminal record supplied first in a consumer report compiled by Defendants.  In fact, many of the entries in the report, including allegations of criminal charges, are simply incomplete as to Plaintiff.

56.    By way of example, the report states that on March 23, 2006, Mr. Dias was charged with a "Violation of Injunction." However, Defendant fails to report that there was a previous "Order Dismissing Temporary Injunction" entered on

March 17, 2006. Therefore, the alleged violation of the injunction was dismissed and Defendant failed to report that as well.

57.     If Defendants had in place procedures to comply with the FCRA, such information would have "aged off" Plaintiff's report after seven years because it is adverse information that is not a criminal conviction. 15 U.S.C. § 1681c(a)(5).

58.     Worse still, the report erroneously alleges Plaintiff was charged with the third-degree felony for possession of a controlled substance in Hernando County, Florida. But Plaintiff was not charged and the case was dismissed as well.

59.     Furthermore, the report is full of similar errors including addresses linked to Plaintiff for places at which he has never resided. Simply put, the information Defendants provided to Sun Com about Plaintiff was false or misleading and it cost Plaintiff his job with Sun Com.

60.     As a result of the erroneous consumer report sold to Sun Com by Defendants, Plaintiff was left jobless and humiliated.

61.     Because of Defendants' actions, Plaintiff lost his job and lost his salary.  He also lost health benefits. Plaintiff further suffered embarrassment, humiliation, frustration, stress, lost sleep, and other aspects of mental anguish due to Defendants' inaccurate reporting of his background to Sun Com.

62.     Plaintiff was unaware that the consumer report Defendants sold to Sun Com in September 2021 would cost him his job and he had no opportunity beforehand to dispute the information Defendants gave to Sun Com about him.

63.   More specifically, it was not until around September 15, 2021, after Sun Com terminated Plaintiff's employment, that Plaintiff first received a copy of the consumer report generated by Defendants after repeatedly asking Sun Com for a copy of the consumer report.

64.   Plaintiff could not have discovered that Defendants sold a report about him to Sun Com any sooner, owing in large part to Defendants' failure to abide by the FCRA's requirement that it notify him when it was reporting to Sun Com negative information about him in the employment context.

65.   Defendants' deceit therefore worked, as they were able to keep themselves secret until Plaintiff threatened to sue Sun Com, and he then learned Defendants' identities through rigorous research and deflection by Hackie.

66.   Hoping to get to the bottom of the inaccuracies in the report, Plaintiff wrote to Defendant Blue Knight and asked for his Section 1681g file disclosure on or about March 29, 2022.  Defendant Blue Knight, through its president Hackie, refused to comply with 1681g, instead responding in denial that Plaintiff's background check was performed by Blue Knight Protection.

67.   However, the background check's document properties state clearly that the report was created by Carlson on September 12, 2021.

68.   Carlson has sworn, in previous litigation between the entities, that he was the executive Vice President of Beach City Investigations and Protective Services, Inc. d/b/a Blue Knight Protection which was acquired by Blackstone Consulting, Inc., in September 2018.

69.     Furthermore, Hackie has sworn, in that same previous litigation, that his retention of his company Blue Knight Global Risk Management Services was engaged by Blackstone Consulting, Inc., to perform consulting services and utilize Hackie's state security provider licenses. In his denial to Plaintiff, Hackie affirmed that he owns and operates the Defendant Blue Knight Global Risk Management Services.

70.     Plaintiff then wrote to Defendant Blackstone on or about May 26, 2023 and asked for his Section 1681g file disclosure. Blackstone signed for Plaintiff's letter on or about May 31, 2023. Aside from leaving a message that Plaintiff never worked for Defendant Blackstone, Defendant Blackstone has failed to provide the full file disclosure that Plaintiff's letter specifically requested.

71.     Notably, in addition to failing to provide all the information they possess about consumers like Plaintiff, Defendants also failed to disclose any sources of information they possessed about Plaintiff, and they did not provide a list of recipients of information, including, for example, Sun Com.

72.     Plaintiff asserts a nationwide class claims against Defendants under 15 U.S.C. § 1681g, because Plaintiff requested his full file disclosure from both Defendants, and Defendants failed to provide the information required by 15 U.S.C. § 1681g.

73.     Plaintiff also asserts a nationwide class claims against Defendants under 15 U.S.C. § 1681k(a), because Defendants provided Sun Com with a consumer report containing inaccurate criminal information likely to adversely

affect Plaintiff's ability to obtain employment without providing Plaintiff with notice at the time they provided the report to Sun Com.

74.    Defendants likewise have in place no strict procedures designed to ensure public-record information they reported was complete and up-to-date, so they cannot rely on the procedures requirement of Section 1681k(a)(2) as the means to comply with Section 1681k.

75.    Defendants also violated Section 1681c(a)(2) of the FCRA as to Plaintiff and a nationwide class of consumers, because Defendants reported information relating to civil suits that predated the reports by more than seven years.

76.    Additionally, Plaintiff asserts a nationwide class claims against Defendants under 15 U.S.C. § 1681c(a)(5).  Defendants regularly violate the prohibition on publishing obsolete criminal information other than convictions of crimes, in violation of 15 U.S.C. § 1681c(a)(5), including as to the report generated on Plaintiff.

77.    Plaintiff also brings an individual claim under 15 U.S.C. § 1681e(b) against Defendants because of inaccuracies contained in his consumer report.

78.    Plaintiff alleges Defendants do not have in place reasonable procedures designed to assure the maximum possible accuracy of the information they report.

79.    Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information like criminal history.

80.    Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by CRAs, prospective employers, and other individuals.

81.    The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

82.    Defendants have an independent obligation to comply with the FCRA.

83.    Defendants' violations of the FCRA have been willful, wanton, and reckless in that they knew, or should have known, that they were failing to comply with the requirements of the FCRA.

84.    Defendants willfully disregard their duties under the FCRA, which exacts serious consequences on job applicants and interstate commerce. The natural result of Defendants' failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports it sells to third parties.

85.    Defendant do not provide notification to consumers that they furnished an employment-purposed consumer report containing a criminal record

likely to adversely affect employment *at the time* it provides the report to third parties.

86.    Defendants expressly disclaims that they are providing consumer reports for employment purposes, yet they knowingly supply such reports to third parties that they know use the reports for employment purposes.

87.    Given this lack of notice, if consumers are lucky enough to learn that Defendants reported information about them, Defendants freezes them out when these consumers ask for their file disclosures.

88.    Instead of revealing the information they possess, the sources, and to whom they have provided such information, Defendants simply ignore the request for information by denying the consumer report it generated is, in fact, one governed by the FCRA.

89.    This is problematic not just because it fails to meet the most-basic disclosure requirement the FCRA demands, but Defendants do not let consumers know where they obtained the information they are reporting, or to whom Defendants gave it.

90.    Adding to the difficulty, wading through Defendants' litany of disclaimers that the information may not be accurate and the FCRA does not govern it, nowhere do Defendants even commit that the information they provide consumers is also information they provided to someone else.

91.    Such secrecy and misdirection are the antithesis of the transparency Congress anticipated when it enacted Section 1681g.

## CLASS ACTION ALLEGATIONS

### PLAINTIFF'S PROPOSED CLASSES

92.     Plaintiff brings this action on a class basis, with initial class definitions that follow.

93.     ***The § 1681g Disclosure Class.*** Plaintiff brings this action for himself and on behalf of the following "Section 1681g Disclosure Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who requested their full file disclosure from Defendants on or after the date two years before the filing of this lawsuit.

94.     ***The § 1681k(a)(1) Notice Class.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiff brings this action for himself and on behalf of the following "Section 1681k Notice Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of the sale by Defendants of one or more criminal public records after two years before the filing of this lawsuit, (b) sold to a consumer reporting agency that resold the data to an end-user for an employment purpose, (c) or sold directly to an end user (other than the consumer) for an employment purpose, (d) to whom Defendants did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice to the subject consumer that it was furnishing the report and containing the name of the person that was to receive the report.

95.    ***The § 1681c(a) Obsolete Civil Information Class.*** Plaintiff brings this class action on behalf of the following "Obsolete Civil Information Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were the subject of the sale by Defendants of one or more public records relating to civil suits or judgments to a third party (b) on or after two years before the filing of this lawsuit, (c) containing a record antedating the report by more than seven years.

96.    ***The § 1681c(a) Obsolete Crimial Information Class.*** Plaintiff brings this class action on behalf of the following "Obsolete Crininal Information Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were the subject of the sale by Defendants of one or more criminal public records, other than convictions of crimes to a third party (b) on or after two years before the filing of this lawsuit, (c) containing a record antedating the report by more than seven years.

97.    **Numerosity.**    Upon information and belief, the putative Classes exceed 40 members each and who are geographically dispersed across the United States. Information concerning the exact size of the putative Class is within the exclusive possession of Defendants or their agents. The Class members are so numerous and geographically dispersed that joinder of all members is impracticable.

98.    **Typicality.** Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

99.    **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and does not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

100.    **Commonality.**  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

a.    Whether Defendants' uniform failure to provide timely notice that it was providing consumer reports for employment purposes containing a negative public record violated the FCRA;

b.    Whether Defendants maintain strict procedures designed to insure complete and up-to-date reports when they never obtain a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

d.    Whether Defendants furnished consumer reports containing civil suit or judgment records that predated the reports by more than seven years.

e.    Whether Defendants supplied consumer reports that contain non-conviction criminal history that antedated the reports by more than seven years;

f.      Whether    Defendants    supplied    employment-purposed consumer reports to users without a permissible purpose to do so in violation of 15 U.S.C. § 1681e(a);

g.      Whether    Defendants'    full    file    disclosures    meet    the requirements of 15 U.S.C. § 1681g;

h.      Whether Defendants' violations of the FCRA were "willful"; and

i.      The amount of statutory and punitive damages to render for Defendants' violations.

101.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

102.    Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Classes, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

103.    **Predominance.**  The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims.  There are no factual or legal issues that differ

among the putative class members. The principal issues are: (a) whether Defendants sold a consumer report to third parties about Plaintiff and each putative class member for a permissible purpose; (b) whether Defendants had reasonable procedures in place to comply with the FCRA; (c) whether Defendants required that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; (d) whether Defendants made a reasonable effort to verify the uses certified by Defendants prior to furnishing such user a consumer report; (e) whether and how Defendants maintained strict procedures to ensure that the criminal public records were complete and up-to-date; (f) whether Defendants sold consumer reports that contained obsolete information to third parties; (g) whether Defendants received advice, guidance, counsel, or legal advice that it was not a consumer reporting agency and/or that the reports it compiled and sold to third parties were consumer reports; (h) whether Defendants delivers compliant full-file disclosures; and (i) whether Defendants acted willfully. Defendants' violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative Class Members.

104.    The members of the classes can be identified and ascertained by using the Defendants' records, records maintained by its customers and the end-users of consumer reports furnished by Defendants to their clients.

## <u>COUNT ONE – CLASS CLAIM</u>
### *Incomplete Disclosures – Violation of 15 U.S.C. § 1681g(a)*
### *(As To Both Defendants)*

105.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

106.   Plaintiff requested from Defendants his full file disclosure as permitted by the FCRA.

107.   Section 1681g required Defendants to respond with all of the information they possessed about Plaintiff, including the sources of such information, as well as a list of those third parties to whom Defendants furnished information.

108.   Defendants instead provided a litany of excuses as to why they supposedly did not have to comply with Plaintiff's requests, as well as a non-compliant, inaccurate criminal history search about Plaintiff.

109.   Defendants violated 15 U.S.C. § 1681g(a) by refusing to provide all of the information they possessed about Plaintiff, as required by Section 1681g(a).

110.   Defendants knew that the FCRA required it to provide a fulsome disclosure, including all the information they possessed about Plaintiff at the time of his request, the sources of that information, and a list of the entities—like Sun Com—to whom it had provided information about Plaintiff.

111.    Despite this knowledge and the easy-to interpret and follow statutory mandates, Defendants failed to meet their statutory duties to provide valid disclosures.

112.    As a result, Plaintiff was deprived of information to which he is statutorily entitled, and was also prevented from being able to learn the sources of information so that he could potentially correct inaccuracies Defendants were perpetuating about him, as well as being kept in the dark as to whom Defendants had provided information about him.

113.    As to Plaintiff and the "Disclosure Class," Defendants regularly fail to provide fulsome file disclosures in violation of 15 U.S.C. § 1681g(a).

114.    As a result of the failure to provide compliant disclosures, Plaintiff and the "1681g Disclosure Class" were subjected to the deprivation of information to which Congress has deemed them entitled to upon a simple request.

115.    The value of a full file disclosure is significant and easily greater than $12.50.

116.    The denial of the full information required in such disclosure caused actual monetary harm in some amount at or over $12.50.

117.    The conduct, action, and inaction of Defendants was willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

118.    Plaintiff and other members of the putative "1681g Disclosure Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT TWO – CLASS CLAIM
### Failure To Provide "At The Time" Notice – Violation of 15 U.S.C. § 1681k(a)(1) (As To Both Defendants)

119.   Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

120.   The consumer report of Plaintiff and of each member of the "1681k Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

121.   As to Plaintiff and the "1681k Notice Class," Defendants uniformly fail to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

122.   On information and belief, Plaintiff alleges that Defendants obtains public records, including criminal records from a third-party consumer reporting agency or vendor, and does not attempt to obtain this information through its own courthouse searches.

123.   On information and belief, Plaintiff alleges that as to the "1681k Notice Class," Defendants did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

124.   On information and belief, Plaintiff alleges that as to the "1681k Notice Class," Defendants did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15

U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

125.   Defendants' failure to timely provide the required FCRA notices to the Plaintiff and other members of the "1681k Notice Class" violated 15 U.S.C. § 1681k(a)(1).

126.   The conduct, action, and inaction of Defendants was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

127.   Plaintiff and other members of the putative "1681k Notice Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT THREE – CLASS CLAIM**
***Obsolete Civil Information – Violation of 15 U.S.C. § 1681c(a)***
***(As To Both Defendants)***

128.   Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

129.   The consumer report about Plaintiff reported records relating to civil suits that not only were incomplete as to him, but which antedated the report by more than seven years.

130.   Discovery will show that Defendants also included such obsolete civil information in the consumer reports it sold to third parties about the putative class members.

131.    Defendants violated 15 U.S.C. § 1681c(a)(2) by reporting civil-suit or judgment information that antedated the report by more than seven years.

132.    Defendants knew that it was forbidden by the FCRA to publish civil-suit or judgment information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

133.    As to the Named Plaintiff and the "Obsolete Civil Information Class," Defendants regularly violate the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

134.    As a result of the publication of obsolete information, the Named Plaintiff and the "Obsolete Civil Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

135.    The conduct, action, and inaction of Defendants was willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

136. Plaintiff and other members of the putative "Obsolete Civil Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR – CLASS CLAIM
### *Obsolete Criminal Information – Violation of 15 U.S.C. § 1681c(a)*
### *(As To Both Defendants*

137.   Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

138.   The consumer report about Plaintiff reported numerous obsolete criminal arrest records that not only were incomplete as to him, but which antedated the report by more than seven years.

139.   Defendants also included obsolete information – for instance, records of arrests antedating the report by more than seven years – in the consumer reports it sold to third parties about the putative class members.

140.   Defendants violated 15 U.S.C. § 1681c(a)(2) by reporting arrest information that antedated the report by more than seven years.

141.   Defendants knew that it was forbidden by the FCRA to publish criminal arrest information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

142.   As to the Named Plaintiff and the "Obsolete Information Class," Defendants regularly violate the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

143.   As a result of the publication of obsolete information, the Named Plaintiff and the "Obsolete Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

144.   The conduct, action, and inaction of Defendants was willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

145.   Plaintiff and other members of the putative "Obsolete Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT FIVE – INDIVIDUAL CLAIM AGAINST DEFENDANT
### *Failure To Ensure Maximum Possible Accuracy – Violation of 15 U.S.C. § 1681e(b)*
### *(As To Both Defendants)*

146.   Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

147.   The consumer report about Plaintiff inaccurately reported numerous erroneous, obsolete and expunged criminal records in a way that made it appear that the consumer had an active criminal record upon which an employment decision might be made, and indeed was made.

148.   The report is rife with inaccuracies, omissions, and errors. In fact, many of the entries in the report, were dismissed more than seven years ago.

149.   By way of example, the report states that on March 23, 2006, Mr. Dias was charged with a "Violation of Injunction." However, Defendants failed to report that there was a previous "Order Dismissing Temporary Injunction" entered on

March 17, 2006. Therefore, the alleged violation of the injunction was dismissed and Defendants failed to report that as well.

150.   Worse still, the report erroneously alleges Plaintiff was charged with the third-degree felony for possession of a controlled substance in Hernando County, Florida. But Plaintiff was not charged and the case was dismissed as well.

151.   The report is full of similar errors wrongly attributing even addresses to Plaintiff that he simply never resided at in his life. Simply put, this information was false and misleading and it cost Plaintiff his job with Sun Com.

152.   Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff.

153.   As a result of this conduct by Defendants, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on his behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

154.   Defendants' violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Defendants liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

155.   Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff and the putative Classes respectfully pray for the following relief:

A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing Plaintiff and the undersigned counsel to represent them;

B. The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C. That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Defendants for violation of 15 U.S.C. § 1681e(b) and pursuant to 15 U.S.C. §§ 1681n and 1681o;

D. An award of Plaintiff's actual damages for Defendants' violations of 15 U.S.C> § 1681e(b);

E. Statutory and punitive damages for all class claims;

F. Attorneys' fees, expenses and costs;

G. Pre-judgment and post-judgment interest as provided by law;

H. All other relief, including equitable relief, as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Dated this 10th day of August, 2023.

Respectfully submitted,

_____

**BRANDON HILL**
Florida Bar No. 37061
**LUIS A. CABASSA**
Florida Bar No. 0053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, FL 33602
Telephone: 813-224-0431
Facsimile: 813-229-8719
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com
Email: gdesane@wfclaw.com

**CRAIG C. MARCHIANDO**
Florida Bar No. 1010769
**CONSUMER LITIGATION
ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel. – (757) 930-3660
Fax – (757) 930-3662
Email: craig@clalegal.com

***Attorneys for Plaintiff***